IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CR LEGAL TEAM, LLP,<br><br>Plaintiff and counter-claim defendant,<br><br>v.<br><br>CARRUTHERS & ROTH, P.A.<br><br>Defendant and counter-claim plaintiff. | ) | 1:25CV921 |

**ORDER AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

This case involves a trademark dispute between two law firms. The plaintiff practices in North Carolina, South Carolina, Georgia, and Alabama. Meanwhile, the defendant practices in North Carolina. Both firms use marks that display the letters "CR."

The matter is now before the Court on two motions: the plaintiff's motion to amend the scheduling order and modify deposition limits, Docket Entry 30, and the defendant's motion to compel, Docket Entry 36.[1]

For the reasons set forth below, the Court grants the plaintiff's motion to amend the scheduling order and modify deposition limits as amended herein. The Court grants in part and denies in part the defendant's motion to compel.

## I. MOTION TO AMEND SCHEDULING ORDER & MODIFY DEPOSITION LIMITS

### A. Procedural History

On April 21, 2026, this Court entered an Order Approving Joint Rule 26(f) Report ("Scheduling Order"), Docket Entry 16 (adopting Joint Rule 26(f) Report, Docket Entry 15). Pursuant to the parties' agreement, the Scheduling Order designated the case-management track as Complex, limited each party to ten fact witness depositions, directed fact discovery to take place by August 28, 2026, and set

[1] The plaintiff's motion to quash, Docket Entry 26, will be addressed in another order.

a discovery conclusion date of October 30, 2026.

On April 24, 2026, the parties served initial disclosures, wherein the defendant identified 36 "individuals likely to have discoverable information." Docket Entry 31-1. The defendant identified 28 of these 36 individuals as having "[i]nformation relating to actual confusion" of the trademark in dispute. *Id.* Shortly thereafter, the defendant produced 19 declarations from various witnesses. On the day that discovery started—April 29, 2026—the plaintiff served its first set of interrogatories, in which the plaintiff attempted to narrow the number of relevant potential witnesses. *See* Docket Entry 31-2. However, the defendant responded by referring the plaintiff to the list of individuals in its initial disclosure and declarations. *See* Docket Entry 31-3 at 5-7. The parties then met and conferred several times throughout June, July, and August 2026. *See* Docket Entry 31 at 3-4. In these meetings, the parties discussed:

- the large number of potential witnesses listed in the defendant's initial disclosure and the desire to narrow that list for depositions or, alternatively, the need to expand the number of depositions; and
- potential compromise solutions for expanding deposition limits (for example, limiting depositions to ten individuals the plaintiff had identified if the defendant would agree to designate remaining witnesses as "will *not* call at trial"). Docket Entry 31 at 3-6, 10-11.

On August 4, 2026, counsel for the defendant emailed: "[W]e would prefer to start depositions after the mediation to give it a chance. Assuming this is acceptable . . . the extension schedule is acceptable," referring to the plaintiff's proposal to modify the discovery schedule, adding the next day: "We don't have a problem with [a joint motion to amend the scheduling order] and are glad an agreement was reached." *See* Docket Entry 31-4. Despite this agreement, on August 16, 2026, the defendant refused to join the motion to amend the schedule.

The plaintiff avers that it waited to conduct depositions until after the August 28, 2026, mediation date, per the defendant's request. However, because this was also the final day to conduct fact discovery, the plaintiff now requests to amend the scheduling order to extend the time allowed for fact discovery in order to take depositions post mediation. The plaintiff's proposed revised schedule also amends several other discovery-related deadlines, including the final discovery deadline.

The plaintiff further asks this Court to replace the stipulated 10-deposition limit with a 70-hour aggregate deposition limit per side because the defendant has identified 36 potential witnesses. Alternatively, the plaintiff asks this Court to allow it to depose any witness "disclosed in Defendant's discovery (unless Defendant

designates such witnesses as 'will not call at trial or use in evidence in any way in this case, including trial, expert reports, summary judgment, or for impeachment'), who is identified in Defendant's expert report(s), or who is identified by such experts or whose testimony/experience or knowledge is relied upon in any way by such experts." Docket Entry 31 at 10.

For its part, the defendant does not oppose a brief extension of the deadline for taking fact witness depositions, but it does oppose a lengthy time extension and opposes amending other dates in the scheduling order. *See* Docket Entry 33. Further, the defendant opposes allowing 70 hours of depositions per side but suggests that each side should be allowed 50 hours of deposition time with a numeric cap on the number of deponents. *See id*. This matter is ripe for disposition.

B. Discussion

Once a scheduling order is issued, "[a] schedule may be modified only for good cause and with the judge's consent." *See* Fed. R. Civ. P. 16(b)(4); *see also* M.D.N.C. L.R. 26.1(d) (stating that motions seeking extension of discovery period "must set forth good cause justifying the additional time and will be granted or approved only upon a showing that the parties have diligently pursued discovery."). Rather than requiring a showing of "manifest injustice" or "substantial hardship," this Court has held that "'the touchstone of "good cause" under Rule 16(b) is diligence.'" *See Kinetic Concepts, Inc. v. Convatec Inc.*, No.1:08CV918, 2010 WL 1418312, at * 3 (M.D.N.C. Apr. 2, 2010) (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 255 (S.D.W. Va. 1995)); *see also* Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

1. Amending Scheduling Order Deadlines

Here, the plaintiff has shown good cause for extending the deadline for fact depositions and related deadlines.

The plaintiff has diligently pursued discovery by serving four interrogatories beginning the very day discovery opened, meeting and conferring with the defendant several times regarding the number of proposed witnesses, and proposing compromise solutions regarding deposition limitations. The plaintiff should not be punished for agreeing to the defendant's preference that depositions wait until after mediation.

The extension of fact witness depositions necessitates additional extensions. That being said, the matter has been set for trial. Thus, the Court must provide adequate time for the District Judge to address dispositive motions prior to trial.

Therefore, the following deadline extensions are imposed: fact discovery closes on November 2,

2026; fact depositions must be completed by November 2, 2026; opening expert reports are due November 2, 2026; rebuttal expert reports are due November 21, 2026; the deadline to provide expert availability for deposition is November 21, 2026; the expert discovery closes on December 15, 2026; notice of dispositive motions are due December 22, 2026; opening dispositive and *Daubert* motions are due December 29, 2026; responses to dispositive and *Daubert* motions are due January 28, 2027; and replies to dispositive and *Daubert* motions are due February 18, 2027.

2. Amending Deposition Limits

"The Court will permit additional depositions only on a showing of *exceptional* good cause." M.D.N.C. L.R. 26.1(d) (emphasis added). To expand the number of depositions beyond ten, the Court must ensure such expansion aligns with the principles in Fed. R. Civ. P. 26(b)(1) and (2). *See* Fed. R. Civ. P. 30(a)(2)(A); *see also* Fed. R. Civ. P. 30 advisory committee's note, 1993 Amendment, Discussion, Subdivision (a) (an "objective [of this rule] is to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case. . . . Consideration should ordinarily be given at the planning meeting of the parties under Rule 26(f) . . . as to enlargements or reductions in the number of depositions, eliminating the need for special motions.").

Under Fed. R. Civ. P. 26(b)(2), the Court must limit the extent of discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."

Here, the plaintiff has shown exceptional good cause. The defendant provided a lengthy list of 36 potential witnesses with minimal information on the knowledge possessed by each witness. The plaintiff has diligently tried to narrow this list of witnesses for depositions by using interrogatories and conferrals requesting information on each witness's role and knowledge. *See* Docket Entry 31 at 2-3; Docket Entry 31-2. However, the defendant directed the plaintiff back to its list of 36 individuals disclosed in the initial disclosures and its declarations from 19 individuals. Docket Entry 31-3 at 5-7.

The plaintiff has also proposed reasonable compromise solutions, *see* Docket Entry 31 at 10—11; the defendant rejected them. Considering the plaintiff's diligent efforts and its need to depose the most relevant fact witnesses, expansion of the deposition limits is warranted. Although this may create duplicative discovery, the situation could have been avoided at the pass had the defendant worked with its colleagues across the aisle to resolve that issue: the plaintiff would better know which

witnesses are duplicative had the defendant identified each witness' role and knowledge as the plaintiff requested.[2]

Balancing the parties' need to depose the most relevant witnesses with their need to limit burdensome or duplicative discovery, the Court orders the following: the plaintiff may depose any witness who provides a declaration in this case or who is disclosed in the defendant's discovery (unless the defendant designates such witnesses as "will not call at trial or use in evidence in any way in this case, including trial, expert reports, summary judgment, or for impeachment"), who is identified in the defendant's expert report(s), or who is identified by such experts or whose testimony/experience or knowledge is relied upon in any way by such experts. However, the plaintiff's fact depositions are limited to 50 hours.

## II. MOTION TO COMPEL

### A. Procedural History

In its requests for production of documents, the defendant sought, *inter alia*, 1) emails and documents regarding the plaintiff's decision to rebrand from Crumley Roberts to CR Legal Team; 2) the plaintiff's marketing expenditure by geographic area; and 3) the plaintiff's agreements with advertising agencies and outlets who assist in promoting the accused CR Legal Team mark. In response thereto, the plaintiff produced a single email publicly announcing the rebrand, no documents on its marketing expenditure by geographic area,[3] and some marketing agreements, which the defendant maintains is an insufficient response. *See* Docket Entry 37 at 2. Consequently, the defendant moves to compel documents in the above categories.

### B. Discussion

Federal Rule of Civil Procedure 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

[2] Additionally, the plaintiff notes that it would not have agreed to ten fact depositions in the initial scheduling order had it known that the defendant's list of potential witnesses was nearly triple that size. *See* Docket Entry 31 at 9-10.

[3] The plaintiff asserts it has compiled data on its marketing expenditures from other documents and offered this data to the defendant. Docket Entry 40 at 12.

> issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

Generally, the party "resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) (collecting cases); *accord Carlton & Harris Chiropractic Inc. v. PDR Network, LLC*, No. 3:15-CV-14887, 2024 WL 1451124, at *2 (S.D.W. Va. Apr. 3, 2024).

1. The defendant's motion regarding rebranding is granted.

A central issue in this trademark dispute is the plaintiff's rebrand from Crumley Roberts to CR Legal Team. Accordingly, the defendant issued requests for production numbers 19, 21, 24, and 50, asking the plaintiff to produce documents and communications surrounding its rebrand decision. *See* Docket Entry 37 at 4—5. In response to these requests, the plaintiff produced one email thread, which announced the name change, but explained that "no [other] documents exist to the best of [their] knowledge and based on a reasonable search." Docket Entry 37-5 at 2. However, the plaintiff limited its search in the following ways:

> (1) The plaintiff only searched for emails that contained the defendant's provided search terms. *See* Docket Entry 40 at 5.
>
> (2) The plaintiff alleges that the rebrand decision was made via "largely verbal" communications between married couple Christopher and Kimberly Roberts. Christopher is CR Legal Team's Chief Executive Officer and Majority Partner, and Kimberly is the Executive Vice President and Chief Administrative Officer. *See* Docket Entry 40 at 8, 10.
>
> (3) The plaintiff did not search the personal devices of its employees, including those belonging to Christopher and Kimberly Roberts. *See* Docket Entry 40 at 10.

Notably, in the single document the plaintiff produced as responsive, CEO Christopher Roberts mentions having worked on the name change with the Executive Committee and Marketing Department. *See* Docket Entry 44 at 5. But the production includes no related internal communications. *Id.* And prior to the name change, the plaintiff began referring to itself as

"CR Legal Team" in social media posts, despite having previously referred to itself as "Crumley Roberts." *See* Docket Entries 44-4, 44-5, 44-6, 44-7.

These facts suggest such documents exist and the plaintiff has not carried its burden of persuasion in resisting this discovery request. Therefore, the Court orders the plaintiff to either 1) produce any outstanding documents responsive to the document requests, without limitation as to search terms used or devices examined (as set forth below); or 2) provide, under oath, an attestation that no other documents exist regarding the rebrand. Further, the plaintiff must produce documents showing its ESI retention policies, to the extent they exist.[4]

In complying with this order, the plaintiff must search personal devices, including those attributable to Christopher Roberts and Kimberly Roberts. *See, e.g.*, *Kubas v. 331B, LLC*, No. DLB-20-2456, 2021 WL 6127875, at *2 (D. Md. Apr. 30, 2021) (requiring the defendant to search its "owners' personal cell phones" for responsive communications under the "guidance and supervision of counsel"). Although the plaintiff alleges that the conversations between the Roberts were "largely verbal," discovery of personal devices can confirm if any written communications exist.

Finally, the plaintiff must not limit its email searches to the search terms provided by the defendant. According to the plaintiff, the parties' Joint Procedural Stipulation on Discovery and Electronically Stored Information ("ESI Protocol") mandates this limitation. *See* Docket Entry 29-1. Not so.

The ESI Protocol stipulates that:

> The parties shall each be permitted a reasonable number of document requests that seek the production of emails containing specific search terms. . . . In addition, the parties agree to meet and confer on the number of search terms and number of individuals whose email documents are to be searched taking into account the stated rationales of such searches and the proportional need of the searches to the needs of the litigation.

Docket Entry 29-1 at 6-7. The plaintiff argues that this protocol *limited* email discovery solely to "emails containing specific search terms." Docket Entry 40 at 1. Thus, the plaintiff limited its email search and response to the defendant's documents requests to seven search terms provided by the defendant, taking no further steps to produce emails relevant to the discovery request.[5] *See* Docket Entry

[4] In CR Legal Team's response to the defendant's second set of requests for production, it stated, "CR Legal Team does not believe any [ESI retention policy] exists." *See* Docket Entry 37-3 at 9.

[5] The defendant initially provided ten search terms but withdrew one. The

40. However, the defendant argues it "never agreed that Plaintiff's search and produce obligations were limited to ESI search terms." Docket Entries 44 at 3, 44-1, 44-2. Instead, the defendant views the ESI Protocol as a tool that works in tandem with broader discovery obligations under the Federal Rules of Civil Procedure. *See* Docket Entry 44 at 2.

The plaintiff's use of the ESI Protocol as a shield from its discovery obligations misses the forest for the trees. The ESI Protocol does not eliminate the plaintiff's "affirmative duty [under Rule 34] to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control.'" *See Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (citation omitted); *In re Camp Lejeune Water Litigation*, No. 7:23-CV-897, 2024 WL 1080988, at *3 (E.D.N.C. Mar. 12, 2024) (holding that an ESI Protocol "complements but does not supersede" Rule 34 obligations). Indeed, "an ESI protocol and search terms work in tandem with the parties' obligations under the Federal Rules and do not replace a party's independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive within the meaning of Rule 34." *Raine Grp. LLC v. Reign Capital, LLC*, 21-CV-1898 (JPC) (KHP), 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022). Consequently, a party "cannot justify failing to collect obviously relevant documents on the ground that the relevant employee was not designated as an 'ESI custodian' or that such documents might fall outside an agreed search-term workflow." *Wilson Aerospace LLC v. Boeing Co. Inc.*, No. C23-847-JHC-MLP, 2026 WL 2069870, at *2 (W.D. Wash. July 17, 2026).

Here, the ESI Protocol "permits" the parties to request "the production of emails containing specific search terms," but it does not serve as the sole means of satisfying requests for email production. *See* Docket Entry 29-1. Therefore, the plaintiff must not limit its search for responsive emails solely to those that appear when using the defendant's requested search terms.

For the foregoing reasons, the Court orders the plaintiff to produce all relevant documents and communications regarding the first use of the name CR Legal Team, as well as the decision to rebrand, and implementation of the rebrand, from Crumley Roberts to CR Legal Team. The Court further orders that CR's review for these documents shall include the searches of all email addresses, both professional and personal, that Christopher Roberts and Kimberly Roberts used, and orders that the work emails of all of the plaintiff's attorneys in Greensboro be searched. These email searches are

---

plaintiff objected to four of the remaining search terms and did not use them in its search for documents. However, the plaintiff did search two additional terms that the defendant requested.

not limited to the ESI search terms that the defendant requested. Additionally, the Court orders the plaintiff to produce its ESI retention policies, to the extent they exist. Finally, if the plaintiff can produce no additional documents about the rebrand, it must provide the defendant with an attestation, sworn under oath, that no other documents exist regarding the rebrand.

2. The defendant's motion regarding its advertising expenditure by geographic area is denied.

The defendant has filed a motion to compel the plaintiff to produce documents regarding its advertising expenditure by geographic area. *See* Docket Entry 37. The plaintiff has already informed the defendant that it stopped tracking its advertising budget by geographic area after 2021, *see* Docket Entry 40 at 11, and the defendant has offered no facts undercutting that representation. Thus, the plaintiff has met its burden and the motion is denied.[6]

3. The defendant's motion regarding advertising materials is granted.

Finally, the defendant has also moved to compel production of all requested and relevant advertising and promotional documents. *See* Docket Entry 37. The defendant served requests for production numbers 2, 6, 23, and 55 regarding the plaintiff's agreements with its advertising agents to advertise using the CR Logo or the mark "CR Legal Team." *See* Docket Entry 37-1. While the plaintiff has produced some advertising agreements, it has not produced any responsive emails. *See* Docket Entry 37 at 8-9. The plaintiff asserts that the defendant "failed to serve search terms that target" communications with third party advertising agencies. Docket Entry 40 at 5. The plaintiff thus limited its email search to the search terms provided by the defendant based on the plaintiff's understanding of the joint ESI Protocol. Docket Entry 40 at 4. As set forth above, though, the ESI Protocol did not limit the plaintiff's discovery obligations under the Federal Rules. Thus, the plaintiff must search its emails for responsive communications even beyond those that hit on the provided search terms.

The Court therefore orders the plaintiff to produce responsive emails between it and its advertising agencies, particularly those that concern the firm rebrand, as well as any documents covering the topic.[7]

[6] The plaintiff has made efforts to compile the requested information from other documents, despite having no documents directly tracking its marketing expenditure by geographic area. *See* Docket Entry 40 at 12.

[7] The defendant argued that the Tar Heel Sports Marketing First Amendment had not initially been produced. However, the plaintiff claims its absence was inadvertent and that it has since produced the document. This issue has

III. CONCLUSION

**IT IS HEREBY ORDERED** that CR Legal Team, LLP's Motion to Amend the Scheduling Order and Modify Deposition Limits [30] is **GRANTED** as amended and explained herein. The following deadlines are imposed: fact discovery closes on November 2, 2026; fact depositions must be completed by November 2, 2026; opening expert reports are due November 2, 2026; rebuttal expert reports are due November 21, 2026; the deadline to provide expert availability for deposition is November 21, 2026; the expert discovery closes on December 15, 2026; notice of dispositive motions are due December 22, 2026; opening dispositive and *Daubert* motions are due December 29, 2026; responses to dispositive and *Daubert* motions are due January 28, 2027; and replies to dispositive and *Daubert* motions are due February 18, 2027.

**IT IS FURTHER ORDERED** that Carruthers & Roth, P.A.'s Motion to Compel Discovery [36] is **GRANTED IN PART AND DENIED IN PART** as explained herein.

JoAnna Gibson McFadden
United States Magistrate Judge

October 20, 2026
Durham, North Carolina

therefore been resolved. Docket Entry 40 at 12-13.