IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CR LEGAL TEAM, LLP,<br><br>Plaintiff and counter-claim defendant,<br><br>v.<br><br>CARRUTHERS & ROTH, P.A.<br><br>Defendant and counter-claim plaintiff. | ) | 1:25CV921 |

**ORDER AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

This case involves a trademark dispute between two law firms who both use marks displaying the letters "C" and "R". The defendant, Carruthers & Roth, P.A. ("C&R"), has issued a subpoena to the plaintiff CR Legal Team, LLP's ("CR Legal Team") outside legal counsel and nonparty attorney, Blake P. Hurt. This matter is now before the Court on the plaintiff's Motion to Quash the subpoena, Docket Entry 26. For the reasons stated herein, the motion is granted in part and denied in part.

I. BACKGROUND

Blake P. Hurt is a nonparty and is outside legal counsel for CR Legal Team. Docket Entry 27 at 2. On behalf of the plaintiff in 2022, Hurt filed an application for the trademark "CR Legal Team" ("the '592 Application"), which is the trademark at the center of the present lawsuit.[1] *See* Docket Entry 32 at 2-3. When the defendant opposed this trademark application in 2024, Hurt again represented the plaintiff throughout the opposition proceedings and negotiations. *Id.* at 3-4; Docket Entry 27 at 2. Now, Hurt serves as one of the plaintiff's trial attorneys in the present matter. Docket Entry 34 at 1.

On July 15, 2026, C&R issued a subpoena to Hurt, commanding him to produce documents and testify at a

[1] CR Legal Team seeks a declaratory judgment that C&R's marks and services are not infringed by the mark "CR Legal Team" and its accompanying services as set forth in its trademark application. C&R's counterclaims assert trademark infringement by the "CR Legal Team" mark and services. Docket Entry 32 at 3-4.

deposition. Docket Entry 27 at 2. The subpoena outlines the following non-exhaustive deposition topics:

(1) "Trademark applications contemplated or considered by CR, whether filed or not, with the U.S. Patent and Trademark Office or any state agency that grants trademark protections that is or was owned by CR, and information regarding the same, including oppositions, cancellations, or other proceedings. You should be prepared to discuss the '592 Application and prosecution history of same, as well as Opposition Proceeding No. 91292919 at the U.S. Patent and Trademark Office."

(2) "Searches, clearances, or investigations conducted concerning the CR Logo, the mark CR Legal Team, and the CR Website by you, anyone hired by you or another employee at Tuggle Duggins, or any third-party watch service prior to CR adopting or using the CR Logo, the mark CR Legal Team, and the CR Website, including trademark searches, risk assessments, and legal opinions, whether or not CR intends to rely on advice of counsel as a defense. You should be prepared to discuss any search for CR LEGAL TEAM prior to the filing of the '592 Application."

(3) "Efforts by you to settle the trademark dispute that is the subject of the instant litigation between CR and C&R, including those between you and any person representing or acting on C&R's behalf. You should be prepared to discuss settlement discussion from before, during, and after C&R opposed CR's '592 Application at the U.S. Patent and Trademark Office."

(4) "Efforts by you, anyone hired by you or another employee at Tuggle Duggins, or any third-party watch service to monitor, police, or enforce any rights CR alleges it has in the CR Logo or the mark CR Legal Team against any third party."

(5) "Your knowledge of Carruthers & Roth and the C&R Marks prior to CR adopting the name CR LEGAL TEAM as the name for the law firm."

Docket Entry 27-1. In addition, the subpoena includes the following document requests:

(1) "Produce all documents and communications concerning any trademark application, including the '592 Application, contemplated or considered by CR, whether filed or not, with the U.S. Patent and Trademark Office or any state agency that grants trademark protections that is or was owned by CR, including any oppositions, cancellations, or other proceedings."

(2) "Produce all documents concerning any search, clearance, or investigation conducted concerning the CR Logo, the mark CR Legal Team, and the CR Website by you, anyone hired by you or another employee at Tuggle Duggins, or any third-party watch service prior to CR adopting or using the CR Logo, the mark CR Legal Team, and the CR Website, including trademark searches, risk assessments, and legal opinions, whether or not CR intends to rely on advice of counsel as a defense. Your production should include any documents concerning any search for CR LEGAL TEAM prior to the filing of the '592 Application."

(3) "Produce all documents and communications concerning any effort to settle the trademark dispute that is the subject of the instant litigation between CR and C&R, including those between you and any person representing or acting on C&R's behalf. Your production should include documents and communications from before, during, and after C&R opposed CR's '592 Application at the U.S. Patent and Trademark Office."

(4) "Produce all documents concerning efforts by you, anyone hired by you or another employee at Tuggle Duggins, or any third-party watch service to monitor, police, or enforce any rights CR alleges it has in the CR Logo or the mark CR Legal Team against any third party."

(5) "Produce all documents concerning C&R or Carruthers & Roth prior to CR adopting the name CR LEGAL TEAM as the name for the law firm."

*Id.* The subpoena also states that if any of "the requested documents are maintained in a file, the file folder is included in the document request of those documents." *Id.*

CR Legal Team argues that fulfilling this subpoena would violate attorney-client privilege and would place an undue burden on Hurt, who will represent CR Legal Team at trial in the instant case. Docket Entry 27 at 4-5, 13. Consequently, CR Legal Team moves to quash the subpoena pursuant to Federal Rule of Civil Procedure 45.

## II. DISCUSSION

### A. Applicable law

A court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . [or] subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Additionally, this rule is "co-extensive with the general rules governing all discovery that are set forth in Rule 26." *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) (unpublished). Thus, discovery is limited to the following:

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "District courts are afforded broad discretion with respect to discovery generally, and motions to quash subpoenas specifically." *Cook*, 484 F. App'x at 812. And when a subpoena is directed to a nonparty, "courts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (citation and internal quotations omitted).

### B. Document Requests

The motion to quash the subpoena is denied as to document requests 1 and 2. The motion to quash the subpoena is granted as to document requests 3, 4, and 5.

Document request 1 stands insofar as it requires the production of nonprivileged communications and documents. While confidential communications between Hurt and the plaintiff regarding trademark applications are privileged, communications between Hurt and any trademark office or agency are not. *See Chaudhry v. Gallerizzo*, 174

F.3d 394, 402 (4th Cir. 1999) ("[C]onfidential communications made between a client and an attorney in an effort to obtain legal services are protected from disclosure."). Although producing these documents is a burden on a nonparty, such burden is proportional to the needs of the case because this case centers around the CR Legal Team trademark set forth in the plaintiff's trademark application. *See* Docket Entry 32 at 2-3. Furthermore, as the attorney who prosecuted the trademark application, Hurt has access to relevant information. *See* Docket Entry 32 at 3.

Document request 2 stands insofar as it requires the production of factual, non-privileged documents. Attorney-client privilege does not extend to "underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981). "[W]hether a trademark search occurred and the results of the trademark searches" are underlying facts, even if they are relayed in a communication between an attorney and client. *See Lilly v. Santander Consumer USA, Inc.*, No. 19-61069-CIV-DIMITROULEAS/SNOW, 2021 WL 11957899, at *3 (S.D. Fla. Feb. 24, 2021). For the same reasons discussed above, the burden of producing these documents is proportionate to the needs of the case.

Document request 3 does not pass the proportionality analysis of Rule 26. It requests the production of documents and communications concerning efforts to settle the parties' trademark dispute. Docket Entry 27 at 3. The burden of production should not be placed on a nonparty when the parties themselves were involved in the settlement efforts in question. There is no indication that Hurt has greater access to relevant information than the parties themselves.

As for document request 4, the burden of discovery on a nonparty (versus a party) outweighs its likely benefit. The parties have not explained how Hurt's own monitoring or enforcement actions are relevant to the instant lawsuit. Thus, there is no indication that the benefits of this discovery can withstand the demanding inquiry into nonparty subpoenas. *See Va. Dep't of Corr.*, 921 F.3d at 189.

Document request 5 is overbroad and vague such that the burden of complying with it is high and any likely benefit unclear. "A subpoena imposes an undue burden on a party when a subpoena is overbroad." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) (explaining that overbreadth meets Rule 45's undue burden standard for quashing a subpoena). Document request 5 is overbroad because it requests "all documents concerning C&R or Carruthers & Roth prior to" CR's name change. Docket Entry 27-1. This request does not limit the documents to the instant matter, but rather requires Hurt to produce any and all documents concerning C&R. Because this document request is not tailored to gather only relevant

information, it constitutes an undue burden and is quashed. *See In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612.

C. Deposition

The motion to quash the subpoena is granted insofar as the subpoena seeks to depose Hurt.

Under Rule 45, undue burden may exist when a party seeks to depose its opponent's counsel. *See N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C. 1987). Such cases "justify[] [a] departure from the normal rule" that "orders totally prohibiting a deposition should be rarely granted." *Id.* at 84. Depositions of opposing counsel "have a tendency to lower the standards of the profession, unduly add to the costs and time spent in litigation, personally burden the attorney in question, and create a chilling effect between the attorney and client." *Id.* at 85 (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)).

Indeed, such depositions pose a danger to the "near absolute protection of an attorney's mental impressions or opinion work product." *Id.* Thus, "courts should exercise great care before permitting the deposition of an attorney inasmuch as even seemingly innocent questions, such as the existence or nonexistence of documents . . . may implicate opinion work product." *Id.* at 85-86 (citing *Shelton*, 805 F.2d at 1327; *see also BB&T Corp. v. United States*, 233 F.R.D. 447, 449 (M.D.N.C. 2006) (explaining that the deposition of a party's attorney is not favored).

Although the party resisting discovery generally carries the burden of persuasion, *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010), the burden shifts when the party seeking discovery seeks to depose its opponent's counsel, *see N.F.A. Corp.*, 117 F.R.D. at 86. And when the proposed deponent is the party's *trial* attorney, the requirements are stringent. Specifically, a party must satisfy the following three criteria:

1) It "must demonstrate that the deposition is the only practical means available of obtaining the information. If there are other persons available who have the information, they should be deposed first. Also, other methods, such as written interrogatories which do not involve the same dangers as an oral deposition, should be employed";

2) It must "show that the information sought will not invade the attorney-client privilege or the attorney's work product"; and

3) "[T]he information must be relevant and the need for it outweigh[s] the disadvantages

inherent in deposing a party's attorney."

*Id.* (citing *Shelton*, 805 F.2d at 1327); *see also Kendrick v Carter Bank & Trust, Inc.*, No. 24-1377, 2025 WL 879703, at *3 n.5 (4th Cir. Mar. 21, 2025) (holding that "a party must satisfy [the '*Shelton* test'] in order to depose an opposing party's attorney") (unpublished); *Smith v. City of Greensboro*, 1:19CV386, 2021 WL 10280229, at *3 (M.D.N.C. August 2, 2021) (applying the criteria "only to active litigation attorneys appearing as counsel of record in the instant lawsuit"); *BB&T Corp.*, 233 F.R.D. at 450 (noting that the stringency of the three criteria may not apply to non-trial attorneys).

Here, Hurt is the plaintiff's trial attorney in the instant matter, meaning the three criteria from *N.F.A. Corp.* strictly apply. *See BB&T Corp.*, 233 F.R.D. at 450. And the defendant cannot satisfy each of these criteria, as set forth below.

1. The defendant has not demonstrated that a deposition is the only practical means available to obtain the information.

The defendant seeks to depose Hurt about trademark applications "contemplated or considered" by the plaintiff. Docket Entry 27-1, Topic 1. Yet, the defendant has not shown that Hurt better knows about the plaintiff's own contemplations or applications than the plaintiff itself. *See, e.g.*, *N.F.A. Corp.*, 117 F.R.D. at 86 (noting other means of obtaining discoverable information) (citations omitted). Further, the defendant seeks to depose Hurt about the opposition proceeding against the plaintiff's '592 Application and efforts to settle the trademark dispute between CR and C&R. Docket Entry 27-1, Topics 1, 3. But the defendant has not shown how Hurt can better speak to this topic than the defendant itself, which was party to these discussions unless, of course, the goal is to discover Hurt's thought processes and communications with the plaintiff regarding this subject, both of which are clearly privileged.

As for the remaining deposition topics (Topics 2, 4-5), Hurt may be the only practical source from which to obtain the information to the extent the topics concern Hurt's own actions and knowledge. However, a deposition is not the only means available to obtain this information, and the defendant should first employ "other methods, such as written interrogatories which do not involve the same dangers as an oral deposition." *See N.F.A. Corp.*, 117 F.R.D. at 86. The defendant has not explained why alternative methods are not practically available. Therefore, the defendant has not met its burden under this first criterium.

2. The defendant has not shown that the deposition will not invade attorney-client privilege or work product doctrine.

"Under the attorney-client privilege, confidential communications made between a client and an attorney in an effort to obtain legal services are protected from disclosure." *Chaudhry*, 174 F.3d at 402. Although "the general purpose of the work performed" is not usually protected by attorney-client privilege, materials "reveal[ing] the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." *Id.* (citing *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).

Each of the five proposed deposition topics may encompass information that is not privileged to the extent that each topic may address non-confidential or non-client communications. *See* Docket Entry 27-1; *Chaudhry*, 174 F.3d at 402. And the defendant has explained that it seeks to depose Hurt only on nonprivileged information, such as trademark searches. Docket Entry 32 at 5. However, there is still a risk that the deposition topics proposed will address privileged information or attorney work product. Indeed, topic two includes "legal opinions" which may run the risk of invading attorney work product. *See* Docket Entry 27-1. Moreover, the subpoena states that the topics listed are not exhaustive, Docket Entry 27-1, n.1, thereby increasing the risk that the defendant may ask Hurt about privileged information. When the plaintiff met and conferred with the defendant about the subpoena, the defendant "would not disclose any specifics" as to what non-privileged information it sought. Docket Entry 34, n.2. Considering the risk of disclosing privileged information and the burden on Hurt to avoid doing so, disallowing a deposition "is superior to requiring the attorney to submit to a deposition and make his objections at that time," *N.F.A. Corp.*, 117 F.R.D. at 85.

Because the defendant has not presented clear parameters that foreclose seeking privileged material, the risk of deposing Hurt and the burden associated with it are unjustified.

3. The defendant has not shown that the need for the information sought outweighs the disadvantages of deposing its opponent's counsel, although the information is relevant.

The deposition topics largely center around Hurt's role as the attorney who prosecuted the plaintiff's '592 trademark application. Docket Entry 27-1. While this trademark application is relevant to certain aspects of the litigation, such as the plaintiff's claimed dates of first use and whether the plaintiff was diligent in clearing its CR Legal Team mark, it

has only limited relevance to the core question of liability in this trademark infringement suit, namely, "whether there exists a likelihood than an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the source of the goods [or services] in question." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990) (internal quotations omitted). Additionally, Hurt's actions surrounding the trademark application have limited relevance when the plaintiff is not asserting an advice of counsel defense. *See* Docket Entry 34 at 2.

Considering this limited relevance, the defendant has not shown that the need for deposing Hurt "outweigh[s] the disadvantages inherent in deposing a party's attorney." *N.F.A. Corp.*, 117 F.R.D. at 86.

III. CONCLUSION

**IT IS THEREFORE ORDERED** that the plaintiff's Motion to Quash, Docket Entry 26, is **GRANTED IN PART AND DENIED IN PART** as explained herein.

JoAnna Gibson McFadden
United States Magistrate Judge

October 27, 2026
Durham, North Carolina